**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| YANCEY LYNDELL DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ROBERT BRADLEY MILLER, | ) | |
| individually, | ) | Case No. CIV-10-1295-D |
| ROBERT BRADLEY MILLER, in his | ) | |
| official capacity; | ) | |
| THE STATE OF OKLAHOMA; and | ) | |
| DURBIN, LARIMORE AND BIALICK, | ) | |
| a professional corporation; | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

        Before the Court is the motion to dismiss [Doc. No. 33] filed by Defendant Robert Bradley

Miller ("Miller") in his individual capacity.  Also before the Court is a motion to dismiss [Doc. No.

34] filed jointly by Miller in his official capacity and the State of Oklahoma ("State").  Plaintiff

timely responded to each motion, and Miller filed replies.  Miller and the State also jointly move

[Doc. No. 47] to strike documents attached to Plaintiff's brief in response to the joint motion to

dismiss, and Miller in his individual capacity has separately filed a motion [Doc. No. 48] to strike

those documents from Plaintiff's response to his motion.  Because the motions are based on the same

factual contentions and raise similar issues, all are addressed in this Order.

I.  Background:

        Plaintiff brings this action pursuant to 42 U. S. C. § 1983, alleging the defendants violated

his constitutional rights in connection with Plaintiff's 1995 Oklahoma County murder conviction

and subsequent incarceration.  He also asserts pendent state law claims.   In summary, Plaintiff

contends that Miller, the Oklahoma County assistant district attorney who prosecuted the case against him, wrongfully procured Plaintiff's murder conviction by suborning perjury and by suppressing exculpatory evidence.   He alleges that Miller induced a witness, Derrick Smith ("Smith"), to falsely identify Plaintiff as a perpetrator of the crime and that, in return for that testimony, Miller agreed to assist Smith in obtaining favorable treatment in an upcoming parole hearing as well as future criminal matters.   Plaintiff alleges that, during the trial, Miller falsely represented to the jury that Smith had no agreement with the prosecution in return for his testimony. He further alleges that, after Plaintiff's conviction, Miller continued to assist Smith by influencing other prosecutors to file reduced criminal charges or otherwise secure leniency for Smith in criminal matters unrelated to Plaintiff's case.   According to Plaintiff, Miller did so to ensure that Smith would not reveal the fact that he falsely testified against Plaintiff and Paris LaPriest Powell ("Powell")[1] and that he did so in exchange for Miller's agreement to assist Smith.  Plaintiff alleges that Miller continued this wrongful conduct after he joined the Law Firm in late 1998, and that the Law Firm assisted Miller in doing so.

Plaintiff was convicted of murder and sentenced to death on July 6, 1995.   He was incarcerated for approximately 16 years, but was released after successfully seeking federal habeas relief.  *See Douglas v. Mullin,* CIV-02-101-C.  Although relief was initially denied by the District Court, the Tenth Circuit reversed that decision, and remanded with instructions to grant a writ of habeas corpus, subject to the State's right to retry Plaintiff within a reasonable time.  *Douglas v.*

---

[1]Powell was separately charged and convicted of murder based on the same drive-by shooting that resulted in Plaintiff's conviction.  Smith also testified against Powell in his trial, and Miller was the prosecutor.  Powell has filed a separate lawsuit asserting essentially the same claims against these defendants as those alleged by Plaintiff. *See Powell vs. Robert Bradley Miller, et al.,* Case No. CIV-10-1294-D.

*Workman,* 560 F. 3d 1156 (10th Cir. 2009).[2] The Oklahoma County District Attorney did not pursue

a new trial, the charges against Plaintiff were dismissed, and Plaintiff was released from confinement

in October of 2009.   After exhausting the Oklahoma Governmental Tort Claims Act notice

requirements, Plaintiff filed this lawsuit.   He asserts claims against Miller in both his individual

and official capacities,  against the State, and against the Law Firm.[3]

II. Motion to strike:

Before considering the arguments asserted in the motions to dismiss, the Court must decide

whether materials attached to Plaintiff's responses must be stricken.   The materials consist of

affidavits executed by Miller after Plaintiff was convicted and sentenced in the criminal case.

Exhibit 1 to Plaintiff's response is a July 2010 affidavit in which Miller summarizes his view of the

facts related to the prosecution of Plaintiff including, *inter alia*, Smith's testimony as well as Miller's

subsequent effort to assist Smith in obtaining  parole.[4] In the Second Amended Complaint, Plaintiff

expressly referenced this affidavit.  Second Amended Complaint  at ¶ 90.  He contends it supports

his allegation that Miller assisted Smith in exchange for Smith's trial testimony as well as his

allegation that Miller's assistance continued well after Plaintiff's trial and conviction, and it reasserts

Miller's contention that he did  not  have  any  agreement  with  Smith  in  exchange  for  Smith's

---

[2]As explained in the Tenth Circuit opinion, Smith later recanted his trial testimony; he testified at a federal habeas evidentiary hearing that Miller knew Smith testified falsely at trial and that Smith agreed to do so in exchange for Miller's promise to assist Smith with a scheduled  parole hearing as well as other criminal matters.  *Douglas*, 560 F. 3d at 1167-68.  The Circuit  discussed the evidence reflecting the assistance provided by Miller to Smith after Plaintiff's  conviction,  and it indicated Miller's assistance continued until 2002.  *Id.* at 1165-67.  The Circuit held that *Brady* violations and willful prosecutorial misconduct warranted granting Douglas's request for habeas relief. *Douglas*, 560 F.3d at 1190-93.

[3]The Law Firm also filed a motion to dismiss the claims asserted against it.  That motion is addressed in a separate order.

[4]Plaintiff states this affidavit was prepared by Miller for filing in Case No. CIV-09-07-R,  a case unrelated to this action.

testimony.   The affidavit submitted as Exhibit 2 was executed by Miller on January 16, 2002, and was filed in Plaintiff's federal habeas corpus proceeding.   This affidavit is not expressly identified in the Second Amended Complaint.

As Miller and the State argue in the motions to strike [Doc. Nos. 47 and 48], the Court generally considers only the allegations in the complaint when adjudicating a Rule 12(b)(6) motion to dismiss, and material outside the pleadings cannot be reviewed unless the motion is converted to one seeking summary judgment.   However, there are exceptions to that rule.   The Court may review material submitted as an exhibit to a pleading or incorporated or referenced in the complaint; documents relied upon by a plaintiff as an integral basis for his claims may also be considered.   *Tal v. Hogan,* 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006)(citing *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 964-65 (10th Cir.1994)).   Where documents are central to a plaintiff's claims, they may be properly considered in a motion to dismiss, and conversion to summary judgment is not required.   *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384-85 (10th Cir.1997).   Consideration of material outside the pleadings is also permissible in testing the sufficiency of § 1983 allegations.   "In analyzing the sufficiency of plaintiff's § 1983 claims, the court is not limited to the four corners of the complaint, but may also consider documents referred to in the complaint."   *Pace v. Swerdlow*, 519 F. 3d 1067, 1072 (10th Cir. 2008).

In this case, although the affidavits at issue are not attached to the Second Amended Complaint, the affidavit submitted as Exhibit 1 is expressly identified by Plaintiff in the Second Amended Complaint at paragraph 90.   Plaintiff relies in part on the content of that affidavit to support his contention that, for some time after Plaintiff's conviction and sentence, Miller continued

4

to represent to the courts that no evidence was suppressed at Plaintiff's trial and that Miller had no

agreement with Smith regarding the testimony offered by Smith at the trial.  The Court finds that

Exhibit 1 may properly be considered in connection with Plaintiff's response, and the motions to

strike are denied to the extent they seek exclusion of that exhibit.    The affidavit submitted as

Plaintiff's Exhibit 2 is not identified in the Second Amended Complaint, nor does Plaintiff refer to

that affidavit as supporting any asserted allegation.  As a result, the Court concludes the affidavit

submitted as Exhibit 2 should not be considered.[5]

Under these circumstances, the Court concludes that the motions [Doc. Nos. 47 and 48] to

strike the affidavits attached to Plaintiff's response briefs are granted in part and denied in part. The

motions are granted as to Exhibit 2 and denied as to Exhibit 1.  The Court will thus proceed to

consider the arguments asserted in the two motions to dismiss.

III. Standards governing Rule 12(b)(6) motions to dismiss:

To avoid dismissal pursuant to  Rule 12(b)(6), a complaint "must contain enough factual

allegations 'to state a claim to relief that is plausible on its face.'"  *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008); *VanZandt*

*v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished

opinion).

To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough

factual matter (taken as true) to suggest' that he or she is entitled to relief." *VanZandt*, 276 F. App'x

at 846 (quoting *Robbins*,  519 F. 3d at 1247).  "Factual allegations must be enough to raise a right

to relief above the speculative level." *Twombly*, 550 U. S. at 555.  Thus,  plaintiffs  must allege

---

[5]Because the content of the two affidavits is similar, it is not clear to the Court why Plaintiff has submitted both.

sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570; *Robbins*, 519 F. 3d at 1247. The factual allegations must be sufficient to raise a right to relief "'above the speculative level.'"*Marshall v. Morton,* 2011 WL 1549516, at *4 (10th Cir. April 26, 2011) (unpublished opinion) (quoting *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007)). The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original).   Although the Court must construe well-pleaded facts as true, not all factual allegations are "entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662,  129 S. Ct. 1937, 1951 (2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.*  The Court need not accept as true  assertions which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Iqbal,* 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 554-555).

IV. Application:

A.  Miller's motion to dismiss individual capacity claims:

In his motion [Doc. No. 33], Miller contends the § 1983 claims asserted against him in his individual capacity must be dismissed because he is entitled to prosecutorial immunity from liability or, alternatively, liability is barred by qualified immunity.  He also argues the § 1983 claims based on his alleged conduct after he was no longer a state employee must be dismissed because he was no longer a state actor.   In addition, he contends the statute of limitations has expired on the claims asserted against him in his individual capacity.

6

1.  Dismissal based on prosecutorial immunity:

State prosecutors are entitled to absolute immunity against suits brought pursuant to § 1983 for activities "intimately associated with the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31(1976).  Such activities include "initiating and pursuing criminal prosecutions."  *Gagan v. Norton,* 35 F. 3d 1473, 1475 (10th Cir. 1994) (citations omitted).

"The question of immunity turns on 'the nature of the function performed.'" *Myers v. Koopman,* 2012 WL 453632, at *2 (10th Cir. Feb. 14, 2012) (unpublished opinion) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127(1997)).  "'[A] prosecutor is entitled to absolute immunity for those actions that cast him in the role of an advocate initiating and presenting the government's case.'" *Klen v. City of Loveland,* 661 F.3d 498, 518 (10th Cir. 2011) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1261-62 (10th Cir.2007)).

"Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluations of evidence, their determinations of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009).  To determine if the challenged conduct constitutes a prosecutorial activity, the "determinative factor is 'advocacy' because that is the prosecutor's main function.'" *Gagan,* 35 F. 3d at 1475 (quoting *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1490 (10th Cir. 1991) (internal citations omitted)).

A prosecutor's immunity does not, however, extend to other functions he may perform outside the scope of his duties as an advocate. As the Supreme Court has explained:

> [T]he absolute immunity that protects the prosecutor's role as an advocate is not
> grounded in any special "esteem for those who perform these functions, and certainly
> not from a desire to shield abuses of office, but because any lesser degree of

> immunity could impair the judicial process itself." *Malley v. Briggs* , 475 U.S. 335,
> 342, 106 S.Ct. 1092, 1097,89 L.Ed.2d 271 (1986). Thus, in determining immunity,
> we examine "the nature of the function performed, not the identity of the actor who
> performed it." *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d
> 555 (1988).

*Kalina*, 522 U.S. at 127. In *Kalina,* the Supreme Court reaffirmed its view in *Imbler* that

prosecutorial immunity protects a prosecutor from a charge that false testimony was offered or that

exculpatory evidence was suppressed. *Id.* at 124.

Consistent with both *Imbler* and *Kalina,* the Tenth Circuit has expressly held a state

prosecutor is entitled to absolute immunity from § 1983 damages where a prisoner alleged the

prosecutor suppressed exculpatory evidence and knowingly presented perjured testimony:

> Absolute prosecutorial immunity applies to both claims that a prosecutor willfully
> used perjurious testimony and claims that a prosecutor willfully suppressed evidence.
> *See Imbler v. Pachtman*, 424 U.S. 409, 431 n. 34, 96 S.Ct. 984, 47 L.Ed.2d 128
> (1976); *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 n. 4 (10th Cir.1991)
> (it is a "well-settled rule that a prosecutor cannot be held personally liable for the
> knowing suppression of exculpatory information" (internal quotation marks
> omitted)).

*Esquibel v. Brian Williamson*, 421 F. App'x 813, 816 (10th Cir. 2010) (unpublished opinion).

In this case, Plaintiff alleges that Miller violated his constitutional rights by suborning perjury

and by suppressing exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

This conduct is expressly alleged to have occurred both during Miller's preparation for Plaintiff's

criminal trial and during the trial itself.  Because the Supreme Court and the Tenth Circuit have held

that prosecutorial immunity bars § 1983 liability for such conduct, Miller's motion to dismiss must

be granted to the extent Plaintiff seeks damages for conduct in preparation for, and during, the trial.

Plaintiff, in fact, concedes in his response brief that prosecutorial immunity likely bars

Miller's § 1983 liability for this specific conduct.  Response at p. 4.  He argues, however, that

prosecutorial immunity does not apply to Miller's conduct outside the scope of his prosecutorial duties after Plaintiff was convicted and sentenced.  He further contends that Miller's conduct after he left his position as a prosecutor and was employed in private practice cannot be protected by prosecutorial immunity.  The Court agrees.

Although prosecutorial immunity bars § 1983 claims based on a prosecutor's conduct in preparation for and during trial, it does not extend to conduct which was not performed in his role as an advocate and constitutes an administrative function. *See, e.g., Coleman v. Turpen*, 697 F. 2d 1341, 1346 (10th Cir. 1983).  Nor does prosecutorial immunity protect a prosecutor who offers testimony as a witness, including testimony in the form of an affidavit, as doing so constitutes performance of "an act that any competent witness might have performed." *Kalina*, 522 U.S. at 129-130.  "Where a prosecutor  personally vouches for the truth of facts set forth in a certification, he is considered a witness and not entitled to immunity." *Nielander*, 582 F. 3d at 1164.  The Tenth Circuit has also held that prosecutorial immunity does not bar liability for submission of a false affidavit after a trial has concluded.  *Martinez v. Winner*, 771 F. 2d 424, 438 (10th Cir. 1985), *modified in part,* 778 F.2d 553 (10th Cir. 1985), *vacated  on other grounds, Tyus v. Martinez,* 475 U.S. 1138 (1986).  Nor does prosecutorial immunity extend to the giving of legal advice "outside the setting of a prosecution." *Mink v. Knox,* 613 F.3d 995, 999 (10th Cir. 2010).  Although prosecutorial immunity may extend to participation in a parole board proceeding, it does so only if "'the prosecutor is personally involved in the subsequent proceedings and continues his role as an advocate'" in those proceedings. *Ellibee,* 244 F. App'x at 844 (quoting *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003)).  The role of advocate applies if the prosecutor's post-trial conduct is in his "role as advocate for the State." *Burns v. Reed*, 500 U.S. 478, 491 (1991).

9

Accordingly, the Court concludes that the motion to dismiss [Doc. No. 33] must be granted in part and denied in part.  To the extent Plaintiff asserts claims based on Miller's alleged knowing presentation of perjured testimony and suppression of *Brady* material, those claims are barred by prosecutorial immunity.  Similarly, the claims are barred to the extent they are based on other allegedly wrongful conduct by Miller in connection with his trial preparation, the trial itself, and post-trial proceedings in which Miller's role was that of advocate for the State.   However, the motion is denied as to Plaintiff's claims based on Miller's post-trial actions in which Miller did not act as an advocate for the State, including his alleged efforts on behalf of Smith, because prosecutorial immunity does not apply to such conduct.  Because prosecutorial immunity does not extend to Miller's alleged conduct after he was no longer employed as a prosecutor, the motion is also denied in that regard.

   2. Dismissal based on qualified immunity:

As Miller argues, a prosecutor whose conduct is not within the scope of prosecutorial immunity may be protected from liability for § 1983 damages under the doctrine of qualified immunity. *See Buckley v. Fitzsimmons,* 509 U.S. 259 (1993).  "Qualified immunity protects government officials performing discretionary functions from individual liability in federal claims unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nielander v. Board of County Comm'rs,* 582 F. 3d 1155, 1166 (10th Cir. 2009) (quoting *Shero v. City of Grove,* 510 F.3d 1196, 1204 (10th Cir.2007)). Qualified immunity is an affirmative defense, and may be raised in a Rule 12(b)(6) motion to dismiss. *Peterson v. Jensen,* 373 F.3d 1199, 1201 (10th Cir. 2004); *Gallegos v. City and County of Denver,* 984 F.2d 358, 361 n. 2 (10th Cir. 1993).

10

The  standard for reviewing a motion to dismiss in a qualified immunity case is the same as for dismissals generally.  *Archuleta v. Wagner,* 523 F.3d 1278, 1281 (10th Cir. 2008).  Thus, the Court must apply the *Twombly* standards to determine the sufficiency of the allegations.  To avoid dismissal based on qualified immunity, the "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins,*  519 F.3d at 1249.

Prior to the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. 223 (2009), the qualified immunity analysis required the Court to first determine whether the complaint alleged conduct which amounted to a constitutional violation and, if so, to then determine whether the right violated was clearly established at the time of the conduct at issue.  *Archuleta*, 523 F. 3d at 1283; *see Saucier v. v. Katz*, 533 U.S. 194, 201 (2001).  In *Pearson*, however, the Supreme Court modified *Saucier* and held that the Court is no longer required to first consider the existence of a constitutional violation; instead, it may analyze the two-part test in any order it chooses.  *Pearson*, 555 U.S. at 236.

Determining whether the law is clearly established usually requires a Supreme Court or Tenth Circuit decision on point.  *See Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009).  The Tenth Circuit has recognized, however, that "[t]he plaintiff is not required to show . . . that the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (citations omitted).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Nielander*, 582 F.3d at 1166-67 (citing *Saucier,* 533 U.S. at 202).

In this case, because the Court has determined that prosecutorial immunity bars the claims

11

based on subornation of perjury and suppression of evidence, the claims are limited to the alleged constitutional violations resulting from Miller's post-trial conduct. Plaintiff contends Miller assisted Smith with his parole hearing and in securing leniency regarding criminal charges asserted against Smith for the purpose of ensuring that Smith would not recant his trial testimony or reveal the conduct which the Tenth Circuit ultimately determined warranted granting habeas relief to Plaintiff. According to Plaintiff's contentions, Miller's actions caused Plaintiff to remain incarcerated for an extended period of time despite Miller's alleged knowledge that Plaintiff was wrongfully convicted.

The Court concludes that, assuming the truth of Plaintiff's allegations, a reasonable prosecutor in Miller's position would have known that his post-trial actions could violate Plaintiff's rights. The Tenth Circuit has recognized the viability of a § 1983 action based on conduct leading to a deprivation of liberty without due process in violation of the Fourteenth Amendment. *See, e.g., Pierce v. Gilchrist,* 359 F.3d 1279, 1284-85 (10th Cir. 2004). The alleged actions of Miller, outside the scope of conduct protected by prosecutorial immunity, are sufficient to state a claim for relief on this basis. As the Tenth Circuit discussed at length in *Pierce,* that falsification of evidence and suppression of evidence in violation of *Brady* violated constitutional rights was well established at the time of Miller's conduct from approximately 1995 through 2002. *Pierce,* 359 F. 3d at 1298-99. Furthermore, a reasonable prosecutor would have known, at the relevant time, that such conduct could constitute a violation of Plaintiff's rights. Dismissal on qualified immunity grounds is thus denied.

3.  Dismissal for lack of state action:

Miller argues that, even if the § 1983 claims are not dismissed on the basis of prosecutorial or qualified immunity, the claims based on his alleged conduct after he joined the Law Firm must

be dismissed for failure to state a claim because he was no longer a state employee at the time of that conduct.

"Section 1983 provides a federal cause of action against any person who, *acting under color of state law*, deprives another of his federal rights." *Howards v. McLaughlin*, 634 F.3d 1131, 1139 (10th Cir. 2011) (emphasis added). Because § 1983 is designed to protect individuals from violations of their rights by state actors, the only proper defendants in a § 1983 claim are those who represent the state in some capacity. *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000).

Contrary to Miller's argument, however, the fact that some conduct occurred after he was no longer a state employee does not necessarily mean no state action was involved. "A defendant does not need to be an officer of the state in order to act under color of state law for purposes of § 1983 liability." *Id.* To implicate § 1983, the defendant's conduct must be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1983). The state action requirement of § 1983 necessarily "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation omitted).

A private person may be liable under § 1983 if he exerts influence over a state entity, substitutes his judgment for the state entity, or participates in the decision leading to the deprivation of rights. *Beedle v. Wilson,* 422 F. 3d 1059, 1071 (10th Cir. 2005). To state a plausible claim for relief against an entity on that basis, a plaintiff must allege facts sufficient to show the relationship on which the claim of state action is premised. *See, e.g., Robbins,* 519 F. 3d at 1247.

Because § 1983 applies only to state actors, factual contentions supporting state action are necessarily essential to stating a plausible claim for relief, and "'mere conclusory allegations with

13

no supporting factual averments are insufficient." *Ellibee v. Fox,* 244 F. App'x 839, 843 (10th Cir. 2007) (unpublished opinion) (citations omitted).  A complaint which fails to allege facts to show that a private person or entity exerted influence over a state actor, substituted its judgment for that of the state actor, or participated in the conduct underlying the claim is insufficient to state a § 1983 claim for relief against the private entity.  *Beedle,* 422 F. 3d at 1071.  Where a private person's § 1983 status as a state actor is premised upon the contention that it acted jointly with a state employee,  the public and private actors must share a common, unconstitutional goal.  *Sigmon*, 234 F.3d at 1126.

In this case, Plaintiff has alleged facts to show that, after Miller left the District Attorney's employ and engaged in private legal practice, he continued to take action on behalf of Smith to ensure the perpetuation of Smith's perjured testimony.  According to Plaintiff's allegations, Miller communicated with prosecutors in Oklahoma and Texas to persuade them to reduce criminal charges against Smith or to otherwise obtain leniency for him.   Plaintiff provides factually detailed allegations regarding these communications. The Court finds the allegations sufficiently specific to constitute a plausible claim for relief based on the contention that Miller's actions as a private attorney were sufficient to support the contention that he exerted influence over a state actor and/or acted jointly with a state actor, as required by *Beedle.*

Furthermore, the Court finds the factual allegations sufficient to allege the personal participation required to state a § 1983 claim for relief, as Plaintiff has alleged facts to identify the actions allegedly taken by Miller. The allegations must "make clear exactly *who* is alleged to have done *what* to *whom.*"  *Robbins*, 519 F.3d at 1250 (emphasis in original).  Plaintiff's allegations satisfy this requirement, as they detail specific events and occurrences in which Miller allegedly took action to assist Smith for the purpose of ensuring Smith did not reveal their agreement or Smith's

false testimony.

Accordingly, to the extent the motion seeks dismissal for lack of state action or personal participation, it is denied.

4.  Dismissal based on expiration of the statute of limitations:

Miller next argues that, even if all claims against him in his individual capacity are not dismissed on other grounds, the § 1983 claims must be dismissed because the statute of limitations has expired.

"Because no federal statute of limitations is provided for section 1983 suits, we measure the timeliness of such actions by state law." *Brown v. Hartshorne Public School District No. 1*, 926 F.2d 959, 962 (10th Cir. 1991). "The timeliness of plaintiff's § 1983 claim is measured by Oklahoma's statute of limitations for personal injury actions and by application of the state's tolling rules and savings provision." *Bryson v. Macy*, 2007 WL 682030, at *7 (W.D. Okla. Mar.1, 2007) (unpublished opinion); *see also Kripp v. Luton*, 466 F.3d 1171, 1174 (10th Cir. 2006).

While state law governs the length of the statute of limitations governing § 1983 actions, "federal law controls...when federal causes of action accrue." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). As a general rule, a federal claim accrues when the plaintiff "knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* "In particular, a civil rights action accrues when [the] facts that would support a cause of action are or should be apparent." *Id.* (quotations omitted).

In this case, Plaintiff alleges that his causes of action did not accrue until, at the earliest, the Tenth Circuit reversed the District Court's decision on March 26, 2009. *See Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009). The Court file in Plaintiff's federal habeas action reflects that, upon

15

remand, the District Court granted a conditional writ, and the State was given time to decide whether to pursue another trial against Plaintiff. The Court file further reflects that, upon remand, the State elected not to pursue a new criminal trial against Plaintiff, and the charges were dismissed on October 2, 2009. *See Douglas v. Gibson*, No. CIV-99-75-C, October 22, 2009 Joint Status Report [Doc. No. 47], attaching Motion and Order of Dismissal in *State of Oklahoma v. Paris Powell and Yancey Lyndell Douglas,* No. CF-1993-3926, District Court of Oklahoma County.

The Supreme Court has held that an individual claiming his conviction is unconstitutional may not bring a § 1983 action until his conviction or sentence has been rendered invalid:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Thus, Plaintiff in this case argues he could not have asserted his § 1983 claims until, at the earliest, the Tenth Circuit issued its opinion on March 26, 2009. Because this action was filed within two years of that date, he contends it is timely.

The Court agrees that, for purposes of the motion to dismiss, the allegations in the Second Amended Complaint reflect that this action was filed within two years of the time period dictated by *Heck* as the earliest date on which his § 1983 claims were cognizable. The parties' briefs on the motion to dismiss do not provide persuasive authority with regard to the impact of *Heck* on Plaintiff's pendent state claims. However, as discussed in more detail, *infra,* one of the essential elements of Plaintiff's state law claim for malicious prosecution is that the prosecution was

16

successfully terminated in his favor.  *See Parker v. Midwest City,* 850 P.2d 1065, 1067 (Okla. 1993).

Thus, he could not have asserted that claim until the Tenth Circuit issued its decision.

The Court concludes that Plaintiff has alleged sufficient facts in the Second Amended

Complaint to show that this action was timely filed within the two-year statute of limitations. To the

extent Miller seeks dismissal on this basis, his motion is denied.

B. Joint motion to dismiss filed by the State and Miller in his official capacity:

The joint motion to dismiss [Doc. No. 34] seeks dismissal of Count III of the Second

Amended Complaint.  In Count III, Plaintiff asserts a pendent tort claim for malicious prosecution

or, alternatively, for negligence.  In the joint motion, the State and Miller also argue that, to the

extent Plaintiff's  § 1983 claims are asserted against them, the claims must be dismissed because

neither the State nor its officials can be liable for § 1983 damages.  The State also argues that

Plaintiff's claim for punitive damages must be dismissed because such damages cannot be recovered

from the State.

In his response, Plaintiff expressly states that he is not asserting a § 1983 damages claim

against the State and Miller in his official capacity and acknowledges such damages are not

recoverable.

With respect to the issue of punitive damages, whether such damages are recoverable is not

a proper subject for adjudication in a Rule 12(b)(6) motion, as the prayer for relief is not a part of

the cause of action. *Hardeman v. Stewart,*  195 F. App'x. 706, 707 (10th Cir. 2006) (unpublished

opinion); *Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F. Supp.2d 1200, 1214 (D. Colo.1998) (citing

*Daniels  v. Thomas*, 225 F.2d 795, 797 (10th Cir.1955)).  Thus, the only issue on a motion to dismiss

is "whether the claim as stated would give the plaintiff a right to any relief, rather than to the

particular relief demanded." *Cassidy*, 1 F.Supp. 2d at 1214 (citing *Asphaltic Enterprises, Inc. v. Baldwin-Lima-Hamilton Corp.*, 39 F. R .D. 574, 576 (E. D. Pa.1966)).   In any event, Plaintiff concedes in his response that such damages are not recoverable against the State.

In light of Plaintiff's response to the motion, the only issue to be decided by the Court is whether the allegations in Count III state a claim for relief against the State[6] for malicious prosecution or, alternatively, for negligence.   As the State correctly argues, the GTCA renders it liable for the torts of its employee only if the tortious conduct was committed while that employee acted within the scope of his employment.   Okla. Stat. tit. 51, § 152.1(A); § 153(A).   Pursuant to the GTCA, conduct within the scope of employment is defined as "performance by an employee acting in good faith within the duties of his office or employment."   *Id.* at § 152(9).   Where an employee has been found to have acted in bad faith, the State is not liable under the GTCA.   *Fehring v. State Insurance Fund,* 19 P.3d 276, 283 (Okla. 2001).

In its motion, the State argues that it cannot, as a matter of law, be liable for Miller's alleged tort of malicious prosecution because, if Plaintiff establishes the elements of that tort, Miller would not have acted in good faith.   As the State points out, to prevail on the tort of malicious prosecution, Plaintiff must prove 1) the defendant brought the original action; 2) it was successfully terminated in the plaintiff's favor; 3) there was an absence of probable cause to bring the action; 4) the defendant acted with malice; and 5) the plaintiff suffered resulting damages.   *Parker v. City of Midwest City,* 850 P.2d 1065, 1067 (Okla. 1993) (citations omitted).   Malice requires "an

---

[6]A claim against an individual acting in his official capacity is a claim against the State.   *Speight v. Presley*, 203 P. 3d 173, 179 (Okla. 2008).   Thus, to the extent Plaintiff characterizes his tort claims as asserted against Miller in his official capacity, he is asserting a claim against the State, and the Court references these claims as directed at the State.

unreasonable act done intentionally, without cause or excuse." *Tuffy's, Inc. v. City of Oklahoma City,* 212 P.3d 1158, 1165 (Okla. 2009) (defining malice as an element of a claim of malicious interference with a business). More specifically, the Oklahoma Supreme Court has held that the GTCA shields a municipality from liability in a suit for malicious prosecution because the requisite element of malice negates a finding that the employee was acting in good faith. *Parker,* 850 P.2d at 1067. As the *Parker* court explained:

> If an employee acts outside the scope of employment, the political subdivision is immune from liability. 51 O.S.1991 § 153. A malicious prosecution action against a municipality presents a real problem when considering the "good faith" requirement set forth in the definition of "scope of employment." Malicious prosecution requires, as elements to be proven, lack of probable cause and malice. *Page v. Rose*, 546 P.2d 617, 620 (Okla.1976). These two elements necessarily include some degree of bad faith. *El Reno Gas & Elec. Co. v. Spurgeon*, 30 Okl. 88, 118 P. 397, 400 (1911). In *Park v. Security Bank & Trust Co.*, 512 P.2d 113, 119 (Okla.1973), we held that to show malice in a malicious prosecution claim, the defendant must have acted because of ill-will or hatred, or willfully in a wanton manner. Malice is a "condition of mind which prompts a person to do a wrongful act willfully...." Black's Law Dictionary (5th Ed.).

*Id.* at 1068. Thus, the court concluded the plaintiff could state a malicious prosecution claim against a police officer in his individual capacity, but the plaintiff could not recover on that claim against the municipality employing the officer because the requisite element of malice negated the element of good faith required to hold the municipality liable. *Id.*

Although Plaintiff's response argues that the question of whether Miller's conduct was in bad faith is typically a fact question for a jury, that argument is persuasive only as to his claim that Miller, acting in his individual capacity, acted in bad faith or maliciously. To establish his malicious prosecution claim, Plaintiff necessarily must show that Miller acted with malice, and proof of malice would negate the State's liability under the GTCA.

19

The Court agrees with Plaintiff, however, that his claim against the State survives the motion to dismiss to the extent Plaintiff seeks to hold it liable for Miller's alleged negligence because Plaintiff is not required to prove malice under that theory of recovery.   The Court concludes that he has alleged sufficient facts to state a claim for relief against the State for negligence on this basis.

For the foregoing reasons, the motion to dismiss [Doc. No. 34] is granted in part and denied in part.   It is granted to the extent that Plaintiff seeks to hold the State liable under the GTCA for Miller's alleged malicious prosecution of Plaintiff.   It is denied to the extent Plaintiff asserts a claim seeking to hold the State liable under the GTCA for Miller's negligent conduct.

V. Plaintiff's request for leave to amend:

In response to both motions to dismiss, Plaintiff asks the Court to grant leave to file a Third Amended Complaint so that he may cure any pleading deficiencies noted.   Where a claim is dismissed pursuant to Fed. R. Civ. P. 12(b)(6), leave to amend to cure the deficiency should be granted unless the Court determines that an amendment would be futile.   *See, e.g., Bauchman v. West High School*, 132 F.3d 542, 559 (10th Cir. 1997) (citing *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir.1996)).   In this case, the Court finds that leave to amend is futile as to the § 1983 claims asserted against Miller in his individual capacity to the extent that such claims are based on conduct which is protected by prosecutorial immunity.   With respect to the claims against the State, leave to amend is futile to the extent Plaintiff seeks  to assert a claim against the State based on Miller's malicious prosecution of Plaintiff.

VI. Conclusion:

As set forth herein, the motions [Doc. Nos. 47 and 48] to strike exhibits from Plaintiff's response briefs are granted in part and denied in part.   The motions are granted as to Plaintiff's

Exhibit 2 and denied as to Plaintiff's Exhibit 1.  The motion to dismiss [Doc. No. 33] of Miller in

his individual capacity is granted in part on prosecutorial immunity grounds, and the balance of the

motion is denied.  The joint motion of the State and Miller in his official capacity [Doc. No. 34] is

granted to the extent it seeks dismissal of Plaintiff's malicious prosecution claim against the State,

and is denied as to Plaintiff's negligence claim.

IT IS SO ORDERED this 30th day of March, 2012.

_____

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE